a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CALVIN KENTRELL HOUSLEY #602265, Petitioner | CIVIL DOCKET NO. 5:18-CV-01600-P |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| DARREL VANNOY, Respondent | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1) filed by *pro se* Petitioner Calvin Kentrell Housley ("Housley"). Housley is an inmate in the custody of the Louisiana Department of Corrections at the Louisiana State Penitentiary in Angola, Louisiana. He challenges his conviction of aggravated rape in the Twenty-Sixth Judicial District Court, Bossier Parish, Louisiana.

Because Housely cannot establish his entitlement to habeas relief, his Petition (ECF No. 1) should be DENIED and DISMISSED WITH PREJUDICE.

I. **Background**

    A. **Procedural Background**

Housley was convicted of aggravated rape and sentenced to life imprisonment. *State v. Housley*, 48,273 (La. App. 2 Cir. 6/26/13), 117 So. 3d 1288, *writ denied*, 2013-

1807 (La. 3/14/14), 134 So. 3d 1190. On appeal, Housley argued that the evidence was insufficient to support his conviction, but the conviction was affirmed. *Id.*

Housley's Application for Post-Conviction Relief raised several ineffective assistance of counsel claims and a challenge to the trial court's jurisdiction. ECF No. 1-3 at 37-43. Housley also filed a Supplemental Application for Post-Conviction Relief. ECF No. 1-3 at 60-63. The trial court denied both applications. ECF No. 1-3 at 64-72. The appellate court denied writs, except as to Housley's claim that trial counsel was ineffective for not challenging a 20-minute pre-interview. ECF No. 1-3 at 101. The trial court was ordered to conduct an evidentiary hearing. ECF No. 1-3 at 101.

Counsel was appointed for Housley, and an evidentiary hearing was conducted. Sgt. Kevin Little testified that he informed Housley of his Miranda rights prior to the pre-interview. ECF No. 1-3 at 102-103. Therefore, the trial court denied relief. ECF No. 1-3, p. 103.

Housley filed another writ application, which was denied on the showing made. ECF No. 1-3 at 127. *State v. Housley*, No. 51,635 (La. App. 2 Cir. 5/4/17). Housley's application for writs in the Louisiana Supreme Court was also denied. *State ex rel. Housley v. State*, 2017-1024 (La. 10/15/18), 254 So. 3d 694.

B. <u>Factual Background</u>

According to the Second Circuit Court of Appeal:

On July 23, 2010, the defendant was living in Bossier City with his aunt and her five children, plus the aunt's roommate. He had lived there for over a year because no other family members would care for him. The

> 19–year–old defendant suffered from mental health issues and received SSI. His aunt was his caregiver.
>
> On the date of the crime, his aunt checked on the children and could not locate [the victim]. When the aunt entered the defendant's room, he jumped from his bed in a state of undress. The aunt turned to see an unclothed [victim]. She screamed at the defendant and hit him while trying to determine what he had done.
>
> Jaumard Seay was visiting at the time and heard the commotion. He held the defendant until the police arrived.
>
> The defendant was interviewed that day and confessed to inserting his penis into [the victim's] vagina. He was arrested and indicted for aggravated rape.
>
> A sanity commission was appointed and submitted on reports from the physicians. The defendant was found competent to stand trial.

*State v. Housley*, 48,273 (La. App. 2 Cir. 6/26/13), 117 So. 3d 1288.

## II. Law and Analysis

### A. Rule 8(a) Resolution

The Court is able to resolve Housley's § 2254 Petition without the necessity of an evidentiary hearing because there are no genuine issues of material fact relevant to Housley's claims, and the state court records provide an adequate factual basis. *See Moya v. Estelle*, 696 F.2d 329, 332-33 (5th Cir. 1983); *Easter v. Estelle*, 609 F.2d 756, 761 (5th Cir. 1980); Rules Governing Section 2254 Cases.

### B. Standard of Review

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). The role of a federal habeas court is to guard against extreme

3

malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and substitute its own opinions for the determinations made by the trial judge. *See Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (citing *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)).

Under § 2254 and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d), habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Martin v. Cain*, 246 F.3d 471, 475-76 (5th Cir. 2001), *cert. den.*, 534 U.S. 885 (2001). Therefore, § 2254(d) demands an initial inquiry into whether a prisoner's claim has been "adjudicated on the merits" in state court. If it has, the AEDPA's highly deferential standards apply. *See Davis*, 135 S. Ct. at 2198 (citing *Richter*, 562 U.S. at 103).

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court

4

precedent to the facts. *See Martin*, 246 F.3d at 476; *see also Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007), *cert. den.*, 555 U.S. 827 (2008).

A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. *See Martin*, 246 F.3d at 476. An unreasonable application is different from an incorrect one. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable. *See Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *see also Davis*, 135 S. Ct. at 2199 (citing *Fry v. Pliler*, 551 U.S. 112, 119 (2007)).

C.   The evidence was sufficient to convict Housley.

Housley alleges there was insufficient evidence to convict him of aggravated rape. ECF No. 1-2 at 20. Specifically, Housley contends that, "although [he] gave statements implicating himself [to the detective], at trial he denied all of the allegations." ECF No. 1-2 at 20. Additionally, Housley notes that the victim did not name him as the person who raped her—she named "an Uncle Joe." *Id.* Housley also points to the following "internal contradictions or irreconcilable conflicts": the victim's mother, "P.H.," did not see the victim in the bed with Housely; a 10-year-old family friend said Housely was on top of the victim, while other witnesses said otherwise;

5

and another witness said the victim was standing on the bed and Housley was under the covers. ECF No. 1-2 at 20.

Housley also argues there was no physical evidence linking him to the crime because a nurse found no evidence of rape, only redness of the victim's genitalia, which could have other causes. ECF No. 1-2 at 21. Housely's DNA was not found on the victim. *Id.*

At the time, Louisiana defined rape as "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime." La. R.S. 14:41. Aggravated rape included "the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim" when the victim is under age 13. La. R.S. 14:42.

The court of appeal noted that, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Housley*, 117 So.3d at 1293 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). The court accurately summarized the testimony of the witnesses as follows:

The victim's mother "P.H.," who is Housley's aunt, testified:

- [Housley] lived with her and her daughters and her friend Crystal;
- [the victim] was four years old at the time of the incident;
- when this event happened, everyone was at home and there were several girls there whom she was babysitting, plus Mr. Seay, who was visiting Crystal;

6

- in searching for [the victim], she looked into the defendant's bedroom, and saw the defendant's boxer shorts around his knees, and the child completely naked;
- she grabbed [the victim] and took her out of the defendant's room;
- she reentered defendant's room, screamed for Crystal, and began beating him;
- she never discussed the incident with the victim;
- in subsequent months, she did notice that [the victim], who was six years old at the time of the trial, would sometimes appear sad and needed comforting;
- the defendant received SSI because of mental problems;
- he could dress himself and do other things, but he did not cook;
- he understood when she talked to him;
- when she entered the bedroom, she was unable to see his genitals; and
- she never saw [the victim] in the bed with the defendant.

*Id.* at 1289-90; ECF Nos. 12-2 at 32-46; 12-3 at 1-6, 10-15.

Kierra Wilson testified:

- she was at P.H.'s house with several others, including [Housley], whom she identified in open court;
- when she entered the bedroom, she was unable to see his genitals; and
- she never saw [the victim] in the bed with the defendant.

*Id.* at 1290; ECF No. 12-3 at 32-38.

Jaumard Seay testified that:

- he was visiting P.H.'s roommate, Crystal, on the day of the incident;
- he was in Crystal's room watching television when he heard P.H. calling him;
- he went to [Housley's] room and saw a naked [victim] standing in the middle of the [Housley's] bed, while [Housley] was hiding under the covers;
- [Housley] was wearing only boxer shorts;
- he stopped [Housley] from running out the back door;
- he restrained [Housley] until the police arrived;
- other children were playing around the house that day; and
- he admitted on cross that he did not see anything that happened in the room between [Housley] and [the victim], acknowledging that he

7

      told detectives Crystal reprimanded [the victim] for running around the house in her panties.

*Id.*; ECF No. 12-3 at 40-53.

      Detective Jeffery Ross testified that:

- he was responsible for processing the crime scene for evidence;
- he took pictures of the various pieces of evidence collected including [the victim's] panties as well as a bedspread, a pillow, bed sheets, and a comforter;
- he also collected a pair of [Housley's] boxer shorts;
- in addition to photographing and collecting evidence, he used an ultraviolet light and orange goggles to examine the mattress for bodily fluids; but
- he found none, though the lighting was bad in the room.

*Id.* at 1290; ECF No. 12-4 at 7-16.

      Olivia Thornhill Jones was qualified as an expert "sexual assault examiner." She testified that:

- she was called in to collect evidence from and examine [the victim];
- she swabbed [the victim's] labia, perineum, and anus;
- she collected a reference DNA sample from [the victim's] cheek;
- she collected the shirt and panties that [the victim] wore to the hospital;
- her full examination of [the victim] revealed redness on her labia majora;
- she was unable to pinpoint the exact cause of the redness;
- the redness could be caused by various things besides sexual assault;
- the child's hymen was still intact and was not torn or bruised;
- this lack of bruising or tearing is not uncommon, even with penetration; and
- she read statistics from several scholarly studies which concluded that young children would not always show signs physical of sexual assault

*Id.* at 1290; ECF No. 12-4 at 21-51.

      Monnie Malakhai was qualified as an expert in the field of DNA analysis. She testified that:

8

- she tested oral, external genital, perineal, and anal swabs collected from [the victim], searching for the presence of spermatozoa and prostate specific antigen (PSA) which can be found in semen;
- neither substance was found on the swabs collected from [the victim];
- the swabs were tested for male DNA, but none was found;
- an alternative light examination was done on the victim's panties and shirt;
- stains characteristic of semen were present;
- other items, such as urine and vaginal secretions can fluoresce or glow under the alternative light source;
- it was more likely that the stains were caused by something other than semen;
- her primary focus was on the items identified as belonging to the victim;
- other items found in [Housley's] room may have revealed semen;
- testing would not have shown when the semen had been deposited; and
- it would be reasonable that [Housley's] DNA would be found in his room.

*Id.* at 1290-91; ECF 12-4 at 55-70.

Kevin Little, a detective in the "crimes against juveniles" division of the Bossier City Police Department, testified that:

- he investigated the case, spoke with the aunt, but collected no evidence;
- the persons present were asked to report to the police station for interviews;
- he took statements from the aunt and Kierra;
- he interviewed [Housley] at the station;
- he advised [Housley] of his Miranda rights and [Housley] signed a "rights card" acknowledging that he understood and agreed to waive his rights;
- he recorded the interview with [Housley], though approximately 20 minutes of the conversation took place prior to the audio recording;
- it was a common practice to conduct a "pre-interview" to ascertain the facts and make sure the conversation stays on the subject of that particular crime;
- the recorded interview was played for the jury;
- he asked [Housley] to tell him about his sexual problems with his girlfriends, a subject having apparently been discussed prior to the recording;

9

- after the interview, he collected buccal (DNA) swabs from [Housley], who then had a seizure, requiring treatment by the fire department;
- the Bossier City Police Department did not have video capabilities for interviews;
- he got the impression that [Housley] was "a little slow";
- [Housley] said he had been threatened;
- [Housley] denied a police officer threatened him;
- he believed [Housley] was talking about the aunt's threats;
- only interviewer and child were in the room for the Gingerbread House video; and
- during the interview, he could speak with the interviewer via headphones.

*Id.* at 1291; ECF No. 12-5 at 1-23.

Housley testified that:

- he was 21 years old at the time of the trial;
- he left school in the ninth grade, and had been in Special Ed classes;
- he was bullied at school by other students because he wore glasses;
- he was living with his aunt and her daughters when this happened;
- his aunt was responsible for his care and support;
- his aunt received an SSI check for him, which he thought was for seizures;
- he could not live on his own;
- he took medicine for seizures and for depression;
- he had no friends and would play video games all day in his room;
- he did not rape, touch, kiss, or penetrate the child;
- he denied getting on top of her or her getting on top of him;
- he denied removing any of [the victim's] clothing;
- his aunt was accusing him because of his SSI check;
- his answer to many questions was that he didn't know or didn't remember;
- he knew right from wrong, most of the time;
- he knew how to manipulate the rules during his schooling;
- he could read and write, a little;
- he knew what he did that day was "a little" wrong;
- he didn't know the difference between a lie and the truth; and
- he had trouble knowing when people were lying to him.

*Id.* at 1292; ECF No. 12-5 at 41-70.

The DVD of the "Gingerbread House" interview of the victim was shown to the jury. The victim also testified that she did not remember anything about the incident, but that what she said in the interview was true. ECF No. 12-6 at 7.

Housley admitted to Detective Little that had sexual contact with the victim. ECF No. 12-1 at 70. Specifically, in Housley's recorded interview that was played for the jury, Housley stated that: "he had trouble getting a woman; he masturbated every night; [the victim] was in the room and pulled down her underwear; he penetrated the child, though not full penetration; it was the first time this happened with [the victim]; the aunt burst into the room and began yelling at him and fighting with him; and Mr. Seay held him while P.H. and Crystal beat and threatened him." *Housley*, 117 So.3d at 1291 n.5.

As Housley points out, there is some conflicting testimony. However, a habeas court must defer to the trial court's findings on issues of conflicting testimony and the weight of the evidence. *See Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Any conflicting inferences and credibility choices must be resolved in favor of the verdict. *Id.* A habeas court may not substitute its judgment for that of the factfinder's. Thus, under the standards of *Jackson* and § 2254, this Court's review on sufficiency of evidence claims is "twice-deferential." *Parker v. Matthews*, 567 U.S. 37, 43 (2012).

Considering this standard, Housley's contention that he is entitled to habeas relief because the victim did not identify him and because he recanted his admission at trial is without merit. The appellate court's determination that the jury's verdict

11

was supported by sufficient evidence was not unreasonable. And, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.

### D. Housley cannot establish ineffective assistance of counsel.

Housley alleges that trial counsel was ineffective by:

1. failing to request a continuance; failing to move for an order declaring Crystal Clark a material witness; and failing to request the issuance of an out-of-state subpoena for Ms. Clark to appear and testify at trial (ECF No. 1-2 at 24);

2. failing to object and move to suppress Housley's confession on the grounds that "he suffers from a serious mental retardation" and had a right to have an attorney present at the time of the confession (ECF No. 1-2 at 29);

3. failing to object and move to suppress the confession on the grounds that Detective Little used psychological coercion to exploit Housley's mental retardation and high degree of susceptibility to suggestion (ECF No. 1-2 at 32);

4. failing to advise Housley to enter a dual plea of not guilty and not guilty by reason of insanity (ECF No. 1-2 at 34);

5. failing to request funding for an expert to support the insanity defense (ECF No. 1-2 at 35); and

6. failing to challenge the 20-minute pre-interview under *Missiouri v. Seibert*, 542 U.S. 600 (2004). ECF No. 1-2 at 36.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). Thus, the question before this Court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The Supreme Court's holding in *Strickland* provides the appropriate standard for judging the performance of counsel. *Strickland*, 466 U.S. at 668. The Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must consider the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Pinholster*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In deciding whether prejudice occurred, courts must review the record to determine

14

"the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

The Supreme Court has clarified that, in applying *Strickland*, on habeas review, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Pinholster*, 563 U.S. at 190, 131 S.Ct. 1388 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)).

15

1. <u>Housley's first ineffective assistance of counsel claim regarding Crystal Clark is meritless.  ECF No. 1-2 at 24.</u>

Housley claims that his attorney was ineffective for failing to request a continuance, failing to move for an order declaring Crystal Clark a material witness, and failing to request the issuance of an out-of-state subpoena for Ms. Clark to appear and testify at trial.  He raised these claims in a supplemental post-conviction application.  ECF No. 12-7 at 19.  The trial court found Housley's argument conclusory and determined that counsel's decision was a matter of trial strategy.  ECF No. 12-7 at 34,

According to the trial transcript, Housley's attorney indicated that it would like to call the victim and the "Gingerbread House" interviewer, Crystal Clark.  ECF No. 12-5 at 33.  The attorney requested an "instanter order" for Ms. Clark to testify.  *Id.*  The state informed the trial court that Ms. Clark was currently working in Texas.  *Id.* at 34.  Nonetheless, the court issued a subpoena for Ms. Clark.  ECF No. 12-5 at 39.  However, Ms. Clark had relocated to Dallas, and her former employer had no forwarding address.  *Id.* at 71.

The court pointed out that, although Ms. Clark had conducted the interview with the victim, Detective Little observed the entire interview.  ECF No. 12-5 at 34-35.  The defense was allowed to recall Detective Little for additional cross-examination.  Little testified that, throughout the interview, he could speak with Ms. Clark through a headset and suggest questions to ask if necessary.  ECF No. 12-6 at 10.  Detective Little was able to authenticate the accuracy of the video, and the video was admitted into evidence.

16

Housley cannot show deficient performance or prejudice caused the omission of Ms. Clark's testimony. The jury saw the entire interview. And, as the trial court noted, nothing supports Housley's contention that Ms. Clark's testimony would have established he did not commit the crime. Ms. Clark could have authenticated the video—which occurred—but could have offered little or no testimony that the jury did not watch.

2. **Housley's second, third, and sixth ineffective assistance of counsel claims regarding his confession are meritless.**

Housley alleges counsel was ineffective for not moving to suppress Housley's confession on the grounds that "he suffers from a serious mental retardation" and had a right to have an attorney present at the time of the confession (ECF No. 1-2 at 29); for not moving to suppress Housley's confession on the grounds that Detective Little used psychological coercion to exploit Housley's mental retardation and high degree of susceptibility to suggestion (ECF No. 1-2 at 32); and for failing to challenge the 20-minute pre-interview under *Missiouri v. Seibert* (ECF No. 1-2 at 36). These claims were presented in Housley's original and supplemental post-conviction applications. ECF Nos. 12-7 at 22-24, 30.

According to the record, Housley's attorney filed a motion to suppress prior to trial based on "Mr. Housley's limited mental capacity" and the intimidating and threatening actions of the officers. ECF No. 12-1 at 21. A hearing was conducted, and the trial court reviewed the recorded interview in its entirety. ECF No. 12-1 at 23. Ultimately, the motion was denied. ECF No. 12-1 at 23-25. Because Housely's second and third habeas claims are contradicted by the record, which establishes that

17

his attorney did file a motion to suppress on the grounds alleged, his claim is meritless.

As to the sixth habeas claim premised on *Missouri v. Seibert*, the appellate court ordered the trial court to conduct an evidentiary hearing because "[t]he veracity of Housley's claim cannot be resolved without determining whether, during the pre-interview, Houlsey waived his *Miranda* rights prior to giving a confession." ECF No. 12-7 at 37. The hearing was held, after which the trial court determined that Miranda rights had been administered to Housley and voluntarily waived. ECF No. 12-7 at 42-43. Writs were subsequently denied. *State ex rel. Housley v. State*, 2017-1024, p. 1 (La. 10/15/18); 254 So.3d 694. Because the claim was ultimately raised and found to be without merit, Housley cannot establish prejudice from his attorney's failure to raise the issue.

### 3. <u>Housley's fourth and fifth claims regarding a dual plea and insanity defense are meritless.</u>

Housley alleges his counsel was ineffective for failing to advise him to enter a dual plea of guilty and not guilty by reason of insanity, and by failing to request funding for an expert to support an insanity defense. ECF No. 1-2 at 34-35. To establish ineffective assistance of counsel for failing to raise an insanity defense or to advise the client to enter a plea of not guilty and not guilty by reason of insanity, the petitioner must show that counsel had some real indication that a mental impairment was a viable defense to the crime charged. *See Byrne v. Butler*, 845 F.2d 501, 513 (5th Cir. 1988); *Wilson v. Butler*, 813 F.2d 664, 671 (5th Cir. 1987). The petitioner

must offer more than the speculative possibility of a successful insanity plea and defense. *See Long v. Krenke*, 138 F.3d 1160, 1162 (7th Cir. 1998).

Counsel clearly investigated Housley's competency prior to trial because he sought the appointment of a sanity commission. ECF No. 12-1 at 19-20. After an examination of the medical examiners' reports, the court found that Housley was competent. ECF No. 12-2 at 1-4. Therefore, Housley cannot establish that a mental impairment was a viable defense to the crime charged.

Moreover, the decisions by counsel whether to present an insanity defense or request funding for an expert to support that defense are matters of trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *McInerney v. Puckett*, 919 F.2d 350, 353 (5th Cir. 1990). Thus, his attorney's failure to pursue an insanity defense cannot meet the standard of *Strickland*.

## III.   Conclusion

Because Housley cannot establish his entitlement to habeas relief, IT IS RECOMMENDED that his Petitioner (ECF No. 1) be DENIED and DISMISSED WITH PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

19

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a circuit justice or district judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within 14 days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

SIGNED on Thursday, May 27, 2021.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE